. EDWARD SAMPSON

*v.*

THE PEOPLE *ex rel*. William C. Rich, Jr., Collector.

· *Filed at Mt. Vernon March 28, 1892.*

1. MUNICIPAL BONDS—*void when donated in lieu of. authorized sub-scription to capital stock*. Where a subscription by a county of $100,000· to the capital stock of a railway company is authorized by a vote of the· people, if the company enters into a contract with the county board, by which the latter sells its stock to the company for $30,000 of its bonds, and issues only $70,000 of bonds, this will amount to a donation by the county of $70,000 of its bonds to the railway company, and such bonds,. as between the county and the railway company, will be void.

2. SAME—*judgment for taxes—absence of proof as to innocent purchasers*. In such a case, a tax levied by the county to pay interest on such bonds, in the absence of proof of their passing into the hands of innocent *bona fide* purchasers, is illegal, and it will be error for the· county court to enter judgment against an objector's lands for such tax.

APPEAL from the County Court of Union county; the Hon. M. C. CRAWFORD, Judge, presiding.

Messrs. KARRAKER & LINGLE, for the appellant.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Union county, for the amount of taxes assessed against appellant's property for the payment of interest on certain bonds issued by the county court of that county to the Cairo and St. Louis Railroad Company.

An election was held in Union county on the 17th of October, 1868, to determine whether the county should subscribe $100,000 to the capital stock of the Cairo and St. Louis Railroad Company, on conditions named, and issue bonds of the county therefor,—one-half when the road should be graded from either of the extreme ends through the county, and the other half when the road should be finished and the cars run-

ning thereon from Cairo to St. Louis,—and a majority vote was cast in favor of such subscription. On the 22d of July, 1871, the county court made an order reciting the holding of the election, and its result, and directing that bonds of the county be issued to the amount of $100,000, and placed in the hands of a custodian named, to be by him delivered to the railroad company when it should comply with the conditions upon which the bonds were to be delivered to it. On the 6th of October, 1874, the following order was made by the county court, namely:

"Jonesboro, Ill., *Tuesday, Oct. 6, 1874.*

"And now on this day come the Cairo and St. Louis Railroad Company, by their president, Col. S. Staats Taylor, and the application of said company made at the September term, A. D. 1874, of this court, for the first installment of Union county bonds in aid of the Cairo and St. Louis railroad, having been duly considered by said court, and it appearing to said court that the said railroad had been duly graded from one end of the extremes of said road through the county of Union, to-wit, from the extreme end at Cairo, in Alexander county, Illinois, through the said county of Union, and that the said railroad company were entitled to demand, have and receive from the said county of Union the first installment of said Union county bonds, to-wit, the sum of $50,000 of said bonds, under and by virtue of a vote of the legal voters of said Union county at an election held on the 17th day of October, 1868, whereby said county subscribed to the capital stock of said railroad company the sum of $100,000 when the said railroad should be graded, as aforesaid.

"It is therefore ordered by said court, that the said first installment bonds, to-wit, the sum of $50,000 of said bonds, now issue and be delivered to said Cairo and St. Louis Railroad Company. And the said Col. S. Staats Taylor, president of the said railroad company, being here now in open court present, and representing said company, and it appearing to

said court that the said Col. S. Staats Taylor, as president of said Cairo and St. Louis Railroad Company, was and is fully authorized and empowered, for and on behalf of said Cairo and St. Louis Railroad Company, to receive and receipt for said bonds, the said first installment aforesaid, to-wit, the said sum of $50,000 of said bonds, the said $50,000 of said bonds are now here in open court delivered to the said Col. S. Staats Taylor for said railroad company, who now here delivers to said court the receipt of said company for the same, and also delivered a certificate of $50,000 of stock of and belonging to Union county.

"And the said Col. S. Staats Taylor, president of said Cairo and St. Louis Railroad Company, being now here in open court present, and representing and being fully authorized and empowered to act for and on behalf of said company, and F. E. Canda, of the firm of H. R. Payson & Co., contractors for the construction of said railroad, being also now here in open court present, and representing and being fully authorized and empowered to act for and on behalf of H. R. Payson & Co., it is hereby agreed between said Cairo and St. Louis Railroad Company, (H. R. Payson & Co. assenting thereto,) that when the said railroad shall be completed and said company shall become entitled to the second installment of Union county bonds, then that the same shall be delivered to said Cairo and St. Louis Railroad Company, and that said railroad company and H. R. Payson & Co. shall then and there, when the same are so delivered, purchase the $100,000 stock of said Union county, received from said railroad company under and by virtue of said subscription, and shall pay therefor to said Union county, out of said second installment of bonds aforesaid, the bonds of said Union county to the amount of $30,000.

"It is further agreed by and between the said Cairo and St. Louis Railroad Company, (H. R. Payson & Co. assenting thereto,) and the said county of Union, that the said second installment of the Union county bonds be placed in the hands

of Jackson Frick, of said Union county, by said county, and that said railroad company shall also prepare and deliver to said Jackson Frick a receipt for said second installment of bonds, and such other papers duly executed as may be necessary to carry out the above agreement. And the said Jackson Frick shall, when the said railroad shall be so completed and the county commissioners shall so direct, deliver to said railroad company the said $100,000 in stock, and to the said county of Union the said sum of $30,000 in the bonds of Union county, in payment of the purchase price agreed upon for the said $100,000 stock aforesaid; and the remaining $20,000 of said bonds the said Jackson Frick shall apply in payment of the indebtedness in said Union county of H. R. Payson & Co., as agreed upon between said railroad company and the creditors of said H. R. Payson & Co."

This contract was executed. The county then had no railroad stock, and the railroad company then had $70,000 instead of $100,000 of the bonds of the county. The tax in controversy is for the interest on the first $50,000, only, of these bonds.

The effect of the execution of the contract is, that the $70,000 is a donation by the county to the railroad company. It is not shown that the rights of innocent assignees of the bonds are involved in the case, and the case is in all respects precisely the same, in principle, as *Choisser* v. *The People, ante,* p. 21, where we held, that as between the county and the railroad company such bonds are void. For the reasons there given, the judgment is reversed, and the cause is remanded to the county court for further proceedings consistent with this opinion.

*Judgment reversed.*